UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTOR SHUFFORD et al.,

        Plaintiffs,                       Case No. 1:08-cv-1218

v.                                          Honorable Janet T. Neff

BARBARA SAMPSON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by two state prisoners pursuant to 42 U.S.C. § 1983. The Court has granted both Plaintiffs leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs' action will be dismissed for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiffs Victor Shufford and Elton Noble are both presently incarcerated at the Oaks Correctional Facility. In their *pro se* complaint, they sue Chairman of the Michigan Parole Board Barbara Sampson and Director of the Michigan Department of Corrections (MDOC) Patricia Caruso for violating their rights under the Due Process and Ex Post Facto Clauses. Plaintiffs also raise state law claims.

Plaintiffs' complaint is vague. Plaintiffs argue that "there [are] improprieties in the parole proceedings," which violate their due process rights. (Compl. at ¶ IV, docket #1.) They also claim that the changes in the 1992 and 1999 parole laws and policies violate the Ex Post Facto Clause. Plaintiffs finally state that the Defendants violated the Michigan constitution, statutes, administrative rules and agency regulations. (*Id.*) Plaintiffs request declaratory relief.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not

accept as true legal conclusions or unwarranted factual inferences).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Due Process**

Plaintiffs claim that Defendants violated their due process rights because of "improprieties in the parole proceedings."  (Compl. at ¶ IV, docket #1.)  To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir.2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).  Plaintiffs fail to raise a claim of constitutional magnitude because they have no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7,

11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole.  *See Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole.  *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990).  In addition, the

Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Furthermore, the Sixth Circuit has held that the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." *Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1165 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board"). Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate. *Carnes*, 76 F. App'x at 80.

Until Plaintiff Shufford has served his twenty-year maximum sentence for a 2000 arson conviction[1] and Plaintiff Noble has served his five-year maximum sentence for a 2002 attempted home invasion conviction and his fifteen-year maximum sentence for a 2001 second-degree home invasion conviction[2], they have no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11.

---

[1] The Court obtained information regarding Plaintiff Shufford's conviction at the MDOC Offender Tracking Information System. *See* http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=238169.

[2] The Court obtained information regarding Plaintiff Noble's conviction at the MDOC Offender Tracking Information System. *See* http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=351539.

The Michigan Parole Board's failure or refusal to consider Plaintiffs for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiffs fail to state a claim for a violation of their procedural due process rights.

      B.    **Ex Post Facto**

Plaintiffs argue that the 1992 and 1999 amendments to the parole laws and policies violate the Constitution's Ex Post Facto Clause. (Compl. at ¶ IV.) The Ex Post Facto Clause prohibits the enactment of any law that "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). In *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), the Supreme Court considered whether a post-sentencing change to parole procedures constituted the type of change in the law subject to analysis under the Ex Post Facto Clause. The Court declined to adopt an interpretation of the Clause that would "forbid[ ] any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Id.* at 508. Instead, the Court established a test inquiring whether a change in the law "produced a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. A sufficient risk of increased punishment involves more than "some ambiguous sort of disadvantage" to an inmate. *Id.* at 506 n.3.

Although a prisoner's release on parole is discretionary with the Parole Board in Michigan, *see* Mich. Comp. Laws §§ 791.233e, 791.235, the Supreme Court in *Garner v. Jones*, 529 U.S. 244 (2000), observed that the "presence of discretion does not displace the protections of the Ex Post Facto Clause," as the "danger that legislatures might disfavor certain persons after the fact is present even in the parole context." *Id.* at 253. The Court further noted that, "[i]t is often the case that an agency's policies and practices will indicate the manner in which it is exercising its

discretion." *Id.* at 256 (citing *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (observing that the reasonableness of discretionary agency action can be gauged by reference to the agency's policies and practices)).  The Court found that in deciding whether an administrative rule pertaining to Georgia's parole system violated the Ex Post Facto Clause, the lower court should have considered a policy statement where it was a "formal, published statement as to how the Board intends to enforce its Rule." *Id.* at 256-57.  However, the Court explained that in the Ex Post Facto analysis, it was equally significant that,

> to the extent there inheres in *ex post facto* doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, . . ., we can say with some assurance that where parole is concerned[,] discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Id.* at 253 (internal citations omitted).

It is clear that the controlling inquiry is whether the retroactive application of an amendment to a law or later enacted law or policy will create a sufficient risk of increasing the measure of punishment attached to a particular crime. *See Garner*, 529 U.S. at 250; *Morales*, 514 U.S. at 509; *Michael v. Ghee*, 498 F.3d 372, 381-83 (6th Cir. 2007) (the relevant inquiry is whether the new parole guidelines present a significant risk of increasing the plaintiff's amount of time actually served).  As previously noted, MICH. COMP. LAWS § 791.235[3] has listed a large number of statutory factors which are to be considered by the Michigan Parole Board.  *See Sweeton*, 27 F.3d, at 1164 n.1 (noting in 1994 that MICH. COMP. LAWS § 791.235 listed "a large number of factors to

---

[3] MICH. COMP. LAWS § 791.235 was originally enacted in 1953, well before Plaintiffs committed the underlying offenses.

be taken into account by the board."). MICH. COMP. LAWS §§ 791.233e and 791.235 may have been amended to become more detailed than former guidelines since 1992, but they are still nothing more than factors and guidelines that are considered by the board in assessing whether parole is appropriate. The Michigan Parole Board's consideration of the nature of Plaintiffs' convictions is well within its discretion both before and after any amendments since 1992. Additionally, both Plaintiffs are serving sentences stemming from convictions, which occurred after 1999. Plaintiffs' allegations fail to suggest that the application of the current parole guidelines will create a significant risk of increasing the punishment attached to their respective offenses and, therefore, their claims are insufficient to implicate the Ex Post Facto Clause.

        C.    **State Law Claims**

Plaintiffs argue that Defendants are violating the Michigan constitution and Michigan statutes and regulations. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166. To the extent that Plaintiffs' complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998). This claim will be dismissed without prejudice.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiffs' appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiffs are barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If Plaintiffs are barred, they will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: February 18, 2009              /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge